*Carbond, Inc. v. Comptroller of the Treasury*, No. 2767, September Term, 2018. Opinion by Zarnoch, J.

**TAX – STATUTORY INTERPRETATION – ADMISSIONS AND AMUSEMENT TAX**

Appellants' electronic gaming devices—being refrigerator-sized machines that entertained customers with spinning wheels and lights, and licensed as "coin-operated amusement devices"—were subject to the Admissions and Amusement Tax as "games of entertainment" within the meaning of the Tax-General Article.

**TAX – STATUTORY INTERPRETATION – ADMISSIONS AND AMUSEMENT TAX**

The General Assembly's addition of the phrase "game of entertainment" to the Admissions and Amusement Tax statute in 1979 was intended "to clarify the application of the tax to those 'games of entertainment' that require . . . the use or rental of recreational or sports equipment." 78 Md. Att'y Gen. Op. 347, 350 (1993).

Circuit Court for Baltimore City
Case No. 24-C-18-001681

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2767

September Term, 2018

_____

CARBOND, INC., ET AL.

v.

COMPTROLLER OF THE TREASURY

_____

Friedman,
Shaw Geter,
Zarnoch, Robert A.
  (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Zarnoch, J.

_____

Filed:  July 29, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

Appellants Carbond, Inc.; Carroll Bond, III; and August Papa (collectively, "Carbond")[1] were assessed by the Comptroller of the Treasury (the "Comptroller") for millions of dollars that Carbond failed to pay in Admissions and Amusement Taxes (the "A&A Tax" or "A&A Taxes") relating to amusement devices placed by Carbond in other businesses in Baltimore City and Baltimore County. Carbond challenges the assessment, maintaining that the video machines at issue are not the sort of "games of entertainment" that are subject to the A&A Tax under the Tax-General Article. *See* Md. Code (1988, 2010 Repl. Vol.), Tax-General Article ("TG"), §§ 4-101–4-102.

The Maryland Tax Court and the Circuit Court for Baltimore City were not persuaded by Carbond's claim. Nor are we. Therefore, we affirm.

## BACKGROUND & PROCEDURAL HISTORY

This appeal concerns electronic gaming devices placed by Carbond in various bars, restaurants, and convenience stores throughout Baltimore City and Baltimore County. A 2010 audit showed that business owners who operated the machines in question (and which Carbond had licensed as "coin-operated amusement devices") were making illegal payouts to customers who "won" while using the machines. That is to say, Carbond's devices were effectively being operated as illegal slot machines. Of more

---

[1] We refer to the appellants collectively as "Carbond" for simplicity. Although Mr. Bond and Mr. Papa were individually and separately assessed for the periods of time that each was president of Carbond (Mr. Bond from April 2000 through September 2008, Mr. Papa from October 2008 through March 2010), there is nothing distinct about Carbond, Inc.; Mr. Bond; or Mr. Papa for the purposes of the legal arguments they make on appeal.

direct relevance to this appeal: the audit showed that Carbond had not paid A&A Taxes[2] on the amounts that were illegally paid out to customers as winnings from the machines.

Based on the audit, the Comptroller assessed Carbond for the additional millions in A&A Taxes that should have been paid on the machines' total gross receipts from April 1, 2000 through March 31, 2010, plus interest, and a fraud penalty.[3]

Carbond, which prior to the audit had otherwise paid A&A Taxes on the machines' net receipts (*i.e.*, excluding the amounts that had been paid out as illegal winnings), subsequently responded by filing for a tax refund, claiming that its machines should not have been subject to the A&A Tax at all, because they were not "games of entertainment" within the meaning of § 4-101(b) of the Tax-General Article. (TG § 4-101(b) defines an "[a]dmissions and amusement charge" as meaning, among other

---

[2]     Section 4-102 of the Tax-General Article ("TG") authorizes counties to impose a tax on "admissions and amusement" charges in the county. Baltimore City and Baltimore County each impose a tax of 10% on the gross receipts from the amounts charged in each jurisdiction for the use of a "game of entertainment" or the use of "recreational or sports equipment." *See* Baltimore City Code, Article 28, § 19-1; Baltimore County Code, Article 11, § 11-4-601 (each mirroring the language from TG § 4-101(b)). Even though counties impose the A&A Tax, "businesses are required to remit admissions and amusement taxes to the Comptroller." *Zorzit v. Comptroller*, 225 Md. App. 158, 162 (2015).

[3]     Though not necessarily relevant to the legal question Carbond raises on appeal, we note that Carbond originally paid the A&A Tax on *net* receipts from the machines in question. The Comptroller's assessment was based upon the determination that Carbond should have paid taxes on the machines' *gross* receipts—*i.e.*, that Carbond should also have paid A&A Taxes on the amounts that business owners had (illegally) paid out to customers in winnings from the machines. *See* TG § 4-102(b) ("A county may impose, by resolution, a tax on . . . the gross receipts derived from any admissions and amusement charge in that county[.]").

taxable charges, a charge for the "use of a game of entertainment" and/or the "use or rental of recreational or sports equipment[.]"). As we will discuss further, Carbond has relied upon the reasoning of a 1993 published opinion of the Maryland Attorney General to support its claim that its machines are not "games of entertainment" that are subject to the tax. Specifically, Carbond likens its video machines to the game of Instant Bingo, given that the Attorney General's 1993 opinion concluded that pre-printed pull-tab Instant Bingo tickets should not be considered "games of entertainment" for the purposes of the A&A Tax. 78 Md. Att'y Gen. Op. 347 (1993). According to Carbond, because its machines offer "the purchase of random chances to win prizes or money," they are materially indistinguishable from Instant Bingo, and thus, are excluded from the A&A Tax outside of Anne Arundel County or Calvert County.[4]

In May 2012, the Comptroller's Office of Hearings and Appeals (1) denied Carbond's refund claim; (2) reduced the A&A Tax assessment against Carbond; and (3) upheld the fraud penalty, in Notices of Final Determination. (Not including interest or the fraud penalty, Carbond, Inc. was assessed $2,907,081.71, Mr. Bond $2,471,019.36, and Mr. Papa $436,062.24).

---

[4] Subsequent to the 1993 Attorney General opinion, the General Assembly amended the A&A Tax statute to expressly state that "[the phrase] '[g]ame of entertainment' includes, in Anne Arundel County or Calvert County, the game of instant bingo permitted under a commercial bingo license." TG § 4-101(c). The General Assembly is "presumed to [know]" of the Attorney General's interpretation, *Benco Vending, Inc. v. Comptroller of Treasury*, 244 Md. 377, 383 (1966), which could place a "gloss" on subsequent legislation. *Id.*

Carbond appealed to the Maryland Tax Court; after a three-day trial, the Tax Court denied the refund claim and affirmed the Comptroller's assessments, but reduced the fraud penalty from 100% to 75% of the tax liability. In an oral decision rendered from the bench, on September 26, 2017, the Tax Court determined that Carbond's machines were "both a game of chance and a game of entertainment," and that "[g]ames of entertainment are subject to [the A&A] tax." The Tax Court also noted that Carbond's machines seemed "identical" to electronic Instant Bingo machines that are currently available for play in Calvert County, as well as to other casino machines, which entertain customers with "spinning wheels, bells, flashing lights, et cetera[.]"

Carbond noted appeals that were consolidated in the Circuit Court for Baltimore City. The circuit court originally remanded the case back to the Tax Court to enter factual findings in support of the conclusion that Carbond's machines were "games of entertainment" subject to the A&A Tax. In an order dated February 23, 2018, the Tax Court reaffirmed its earlier oral decision that Carbond's "refrigerator-sized"[5] machines were electronic "games of entertainment" subject to the A&A Tax. Notably, the Tax Court found that while the phrase "game of entertainment" was added to the A&A Tax statute in 1979, before 1979 coin-operated amusement devices would have been equally subject to the A&A Tax as "the use of recreational equipment."

---

[5] The Tax Court found that Carbond's machines "may be a separate console the size of an apartment refrigerator or they may be mounted on a wall in an establishment." Presumably, the Tax Court meant by this description that the consoles are the size of a "mini-fridge," as a normal refrigerator would be the same size in either an apartment or a house.

After the Circuit Court for Baltimore City affirmed the Tax Court's decision, this appeal followed.

## DISCUSSION

"As the Tax Court is an adjudicative administrative body of the executive branch, its decisions are subject to the same standards of judicial review as adjudicatory decisions of other administrative agencies." *NIHC, Inc. v. Comptroller of Treasury*, 439 Md. 668, 682 (2014). Thus, on appellate review "[w]e review the decision of the Tax Court, not the ruling of the circuit court . . . ." *Comptroller of Treasury v. Johns Hopkins Univ.*, 186 Md. App. 169, 181 (2009). Our review "is limited to determining if there is substantial evidence in the record as a whole to support the [Tax Court's] findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law. We cannot uphold the Tax Court's decision on grounds other than the findings and reasons set forth by the Tax Court." *Comptroller of Treasury v. Taylor*, 465 Md. 76, 86 (2019) (Citation omitted). We give "great weight to the Tax Court's interpretation of the tax laws, but review[] its application of case law without special deference." *NIHC*, 439 Md. at 683. Additionally, published opinions of the Attorney General are generally entitled to "careful consideration" by the courts. *Brown v. County Comm'rs of Carroll County*, 338 Md. 286, 296 (1995) (Internal quotation marks omitted); *cf. State ex rel. Attorney General v. Burning Tree Club, Inc.*, 301 Md. 9, 34 (1984) ("[M]embers of the General Assembly rely upon the advice of the Attorney General as to whether a proposed enactment is valid.").

The issue before us on appeal is whether Carbond's electronic gaming devices are subject to the A&A Tax under § 4-101(b) of the Tax-General Article. Relying on the strength of the published 1993 Attorney General opinion, 78 Md. Att'y Gen. Op. 347, Carbond makes the following multi-step argument: (1) because its machines are indistinguishable from the game of Instant Bingo (in that they require no skill to play, and offer purchasers the chance to win prizes or money), (2) they fall outside the ambit of the A&A Tax, given that (3) the Attorney General concluded in the 1993 opinion that pull-tab Instant Bingo tickets are not the sort of "games of entertainment" that are generally subject to the A&A Tax, and (4) the General Assembly responded to this 1993 Attorney General opinion by only specifying that licensed Instant Bingo games *in Anne Arundel County or Calvert County* are to be considered "games of entertainment" for the purposes of the tax. *See* TG § 4-101(c) ("'Game of entertainment' includes, in Anne Arundel County or Calvert County, the game of instant bingo permitted under a commercial bingo license."). In other words: Carbond argues that its machines are not covered by the A&A Tax, being indistinguishable from Instant Bingo machines (yet located in Baltimore City and Baltimore County), and not otherwise "games of entertainment" that are generally subject to the tax. Like the Tax Court, we disagree.

As a starting point, a central premise of Carbond's argument is misplaced. The Attorney General opinion that Carbond relies upon for the foundation of its entire appeal inescapably points to the conclusion that Carbond's machines—being refrigerator-sized *machines* that entertain customers with the proverbial bells and whistles—are not only the sort of "recreational equipment" that have long been subject to the A&A Tax (as

6

"equipment"), but are the sort of recreational equipment to which the statutory phrase "game of entertainment" was intended to refer. Thus, as the Tax Court recognized, Carbond's machines are properly subject to the A&A Tax generally as "games of entertainment." Carbond's attempt to avoid the tax implications of this conclusion by conflating its machines with Instant Bingo, and thus, potentially bring the machines outside the ambit of the tax, is unavailing.

As is relevant for our purposes here, the 1993 Attorney General opinion began by examining the General Assembly's addition, in 1979, of the phrase "games of entertainment" to the A&A Tax statute's list of taxable charges. The phrase was added at that time to the category of taxable charges that had (since the 1940's) been basically described as "the use of sporting or recreation facilities or equipment." As a result of the 1979 amendment, the relevant portion of the tax statute then stated that the A&A Tax was applicable to receipts derived from the "use of sporting or recreational facilities or equipment, including the rental of sporting or recreational equipment, and games of entertainment." Chapter 535, Laws of 1979.

In tracing this history, the Attorney General's opinion explained that this 1979 addition of the phrase "games of entertainment" to the statute was merely intended as a harmonious and clarifying gloss: "merely to clarify the application of the tax to those 'games of entertainment' that require . . . the use or rental of recreational or sports equipment." 78 Md. Att'y Gen. Op. at 350. In other words, there was no question that recreational activities that otherwise involved the use of certain equipment were already subject to the A&A Tax, and the phrase "games of entertainment" was simply a gloss to

7

that longstanding understanding—*i.e.*, another way of saying "recreational activities that require facilities or equipment."[6] Accordingly, the Tax Court did not err in recognizing that Carbond's machines, given their spinning wheels and lights (not to mention their very nature as refrigerator-sized *machines*), are precisely the sort of coin-operated amusement devices that have been recognized as falling under the A&A Tax. *See 318 N. Mkt. St., Inc. v. Comptroller*, 78 Md. App. 589, 597 (1989) ("The purpose of the [1979] amendment was to make clear that admissions and amusement taxes applied to games of entertainment such as coin operated amusement devices."); *see also Rossville Vending Mach. Corp. v. Comptroller of the Treasury*, 97 Md. App. 305, 309 n. 2 (1993) (Noting that this Court, in a prior iteration of the litigation that was before us in that case, had held in an unreported opinion that "[r]eceipts from coin-operated amusement devices were found to be subject to admissions and amusement tax as receipts from the operation of 'sporting or recreational facilities or equipment.'"). Simply put, any argument that

---

[6]    Indeed, we note that in examining the history of the 1979 amendment, the Attorney General opinion stated that the specific purpose behind adding the phrase "game of entertainment" was "to eliminate any uncertainty regarding the application of the [A&A] tax to coin-operated amusement devices like video games." 78 Md. Att'y Gen. Op. at 349. The Attorney General opinion further recognized that this Court had previously acknowledged the very same point: that "[t]he purpose of the [1979] amendment was to make clear that admissions and amusement taxes applied to games of entertainment such as coin operated amusement devices." *318 N. Mkt. St., Inc. v. Comptroller*, 78 Md. App. 589, 597 (1989). In light of this explicit statement concerning coin-operated amusement devices, we consider it particularly notable—indeed, almost determinative—that Carbond's machines were licensed as "coin-operated amusement devices."

Carbond's machines are not "games of entertainment" for the general purposes of the A&A Tax is without merit.

Carbond attempts to avoid this straightforward conclusion by equating its machines with the pre-printed pull-tab Instant Bingo tickets that were the specific focus of the 1993 Attorney General opinion, given that the opinion concluded such Instant Bingo tickets were not "games of entertainment" for the purposes of the A&A Tax.[7] In attempting to make this comparison, however, Carbond overlooks a critical aspect of the Attorney General's analysis: "playing" such pull-tab Instant Bingo tickets did not require the use of facilities or equipment that would otherwise make the tickets clearly subject to the A&A Tax. As the Attorney General explained, "[t]he only item used by the purchaser [of an Instant Bingo ticket] is the pull-tab or scratch-off ticket. The tickets can be sold anywhere, because no 'facilities' or 'equipment' are required. Only the ticket is required, the purchase of which essentially constitutes the 'game.'" 78 Md. Att'y Gen. Op. at 351. That is to say, in contrast to activities that involved bona fide recreational facilities or equipment (and thus, would be subject to the tax), pull-tab Instant Bingo tickets were not "games of entertainment" because, among other reasons, they did not require facilities or

---

[7]      As the Comptroller points out, by characterizing its machines as indistinguishable from "Instant Bingo"—on the basis that its machines are similar to contemporary Instant Bingo machines that are available for play in Calvert County—Carbond conflates the pre-printed, pull-tab Instant Bingo tickets that were specifically at issue in the 1993 Attorney General opinion with electronic Instant Bingo machines currently installed in Calvert County. As illustrated by the General Assembly's amendment of the Tax-General Article subsequent to the Attorney General's 1993 opinion, understandings of "Instant Bingo" have not necessarily frozen in time since 1993. *See*, *e.g.*, *Chesapeake Amusements, Inc. v. Riddle*, 363 Md. 16 (2001) (Examining whether electrically-operated machines that dispensed paper pull-tab Instant Bingo tickets were prohibited "slot machines").

equipment for their "play." *See id.* at 353 ("With instant bingo . . . there are no rules or methods to follow, because there is nothing to 'play.' The amount of time involved is minimal, there is no 'equipment' required other than the ticket itself, and there is no need for a 'facility.' . . . The sale of instant bingo tickets is truly akin to the sale of instant lottery tickets, chance books, and raffle tickets, none of which are subject to the admissions and amusement tax."). Although pull-tab Instant Bingo tickets may not require such equipment, the Tax Court did not err in determining that Carbond's refrigerator-sized machines, replete with spinning wheels and lights, inherently involve the use of such equipment.[8]

Moreover, Carbond's attempt to characterize its machines as indistinguishable from electronic Instant Bingo machines—because they require no skill to play and offer purchasers the chance to win prizes or money—overlooks the fact that, notwithstanding any similarities, its machines are not officially *licensed* as Instant Bingo. After all, § 4-101(c) of the A&A Tax statute specifies that the phrase "game of entertainment" includes those games of Instant Bingo in Anne Arundel County or Calvert County that are "permitted under a commercial bingo license."[9] Nor is this the only location in the Code

---

[8] Contrary to Carbond's argument, the Attorney General did not conclude that pull-tab Instant Bingo tickets fell outside the ambit of the tax *because* they offered "the sale of chances to win prizes or money," but because they were *nothing more* than the sale of chances to win prizes or money. *See* 78 Md. Att'y Gen. Op. at 354.

[9] *See also* Md. Code (2002, 2012 Repl. Vol.), Criminal Law Article, § 13-101(b) ("A county may not issue a commercial bingo license under this title or under any public local law to an entity that was not licensed to conduct commercial bingo on or before June 30, 2008.").

where the General Assembly has still seen fit to distinguish Instant Bingo machines from other gaming devices that may similarly happen to award money (or the right to receive money) through the unpredictable element of chance. *See*, *e.g.*, Md. Code (2002, 2012 Repl. Vol.), Criminal Law Article, § 12-301(3)(iii) (Specifically singling out certain Instant Bingo machines as excluded from the definition of "slot machine," even though, like other machines, they might otherwise fit the statutory definition as coin-operated devices that award money or the right to receive money through the element of chance). In short, notwithstanding any outward and/or mechanical similarities between its machines and Instant Bingo machines, Carbond cannot now create a tax loophole for itself by unilaterally attempting to rebrand its coin-operated amusement devices as de facto Instant Bingo machines.

In sum: the Tax Court correctly recognized that Carbond's machines are "games of entertainment" for the purposes of the A&A Tax. Carbond's attempt to characterize its machines as indistinguishable from Instant Bingo machines for tax purposes is unavailing.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**

11