*Comptroller of Maryland v. William Atwood*, No. 163, Sept. Term 2020.  Opinion by Zic, J.

**TAX – MD. CODE ANN., TAX GEN. ARTICLE § 11-208(c)(1) – SALES AND USE TAX EXEMPTION – INTERSTATE COMMERCE**

Section 11-208(c)(1) of the Maryland Code, Tax – General Article provides that "an aircraft, motor vehicle, railroad rolling stock, or vessel that is used principally to cross State lines in interstate or foreign commerce" is exempt from the State's sales and use tax.  The statute requires that, for an aircraft to qualify for the sales and use tax exemption, it must be used for a commercial or business purpose.  The mere crossing of state lines with an aircraft is not enough for it to be exempt from the sale and use tax pursuant to § 11-208(c)(1).

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 163

September Term, 2020

_____

COMPTROLLER OF MARYLAND

v.

WILLIAM ATWOOD

_____

Kehoe,
Shaw Geter,
Zic,

JJ.

_____

Opinion by Zic, J.

_____

Filed: July 28, 2021

*Ripken, J., did not participate in the Court's decision to designate this opinion for publication pursuant to Maryland Rule 8-605.1.

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

The Comptroller of Maryland ("Comptroller"), appellant, appeals the order of the Circuit Court for Anne Arundel County affirming the ruling of the Maryland Tax Court ("Tax Court"), which found that William Atwood, appellee, is not required to pay a sales and use tax on a "1958 Beechcraft Travelair airplane" ("Aircraft") he purchased because his use of the Aircraft fell under the exemption for use in interstate commerce pursuant to § 11-208(c)(1) of the Maryland Code, Tax – General Article ("Tax Code"). During the first year of ownership, Mr. Atwood used the Aircraft to fly across state lines to give his son flight lessons and to commute to his place of employment in New York.

The Tax Court held, and the circuit court affirmed, that Mr. Atwood used the Aircraft "principally in interstate or foreign commerce." Md. Code Ann., Tax-Gen. § 11-208(c)(1). We shall reverse the judgment of the circuit court and remand this case to it so that the court can remand the case to the Tax Court with instructions to affirm the Comptroller's assessment. We explain.

## QUESTION PRESENTED

The Comptroller presents one question for appellate review, which we have rephrased as follows:

> Did Mr. Atwood's use of his Aircraft during the audit period, which was principally to provide his son with flight lessons and to commute to his place of employment in New York, fall under the definition of interstate commerce, thus rendering the purchase of the Aircraft exempt from the Maryland sales and use tax pursuant to § 11-208(c)(1) of the Maryland Tax Code?[1]

[1] The Comptroller phrased the question as follows:

We answer the question in the negative and shall reverse the judgment of the Tax Court. We explain.

## FACTS AND PROCEEDINGS

Mr. Atwood purchased the Aircraft in Ohio and stored it in Maryland,[2] his place of residence. Mr. Atwood purchased the Aircraft for $34,000 on February 8, 2017. He did not pay a sales and use tax for the Aircraft in Ohio or in Maryland. The applicable audit period is the first year of ownership of the Aircraft, from February 8, 2017 through February 7, 2018. During the audit period, the Aircraft was flown 126 times; 92 of the flights crossed state lines. Mr. Atwood used the Aircraft primarily to give his son flight lessons and to commute to his place of employment at John F. Kennedy International Airport in New York.

---

Did the Maryland Tax Court err in concluding that an airplane was exempt from sales-and-use tax under Tax-General § 11-208(c)(1), notwithstanding binding precedent that holds vehicles covered by the statute are exempt from the tax only if used primarily for the movement of passengers or freight in interstate commerce, where the stipulated facts established that the subject airplane was not used primarily for the movement of passengers or freight in interstate commerce, but was instead used by an airline pilot commuting to work and giving his son free flight instruction?

Mr. Atwood presented the following question: "Did the Circuit Court err by affirming the Tax Court's ruling that Md. Code Ann. (2019) § 11-208(c)(1) exempts from sales and use tax an aircraft used principally to cross state lines in interstate commerce?"

[2] The Aircraft is stored at the Tipton Army Airfield in Anne Arundel County.

2

The parties agreed to multiple stipulated facts; the following are of particular importance:

> 12. [Mr. Atwood] purchased the Aircraft to train his son . . . in preparation for certification as a commercial airline pilot.
>
> . . . .
>
> 17. [Mr. Atwood] occasionally offers flight lessons to friends and acquaintances for approximately $60.00 per hour but did not have any such income relating to the Aircraft during the audit period.
>
> . . . .
>
> 24. Of the 126 flights flown during the first year of ownership over 90% of the flights were flown for purposes of providing flight instruction to [Mr. Atwood's son].
>
> . . . .
>
> 28. *There was no business purpose for the friends and family flying on the airplane.*
>
> . . . .
>
> 30. *None of the flights involved the movement of freight or cargo.*
>
> . . . .
>
> 33. *None of the flights involved the movement of passengers for a commercial or business purpose.*
>
> . . . .
>
> 45. [Mr. Atwood] did not recognize any income, business expenses or depreciation relating to the use or ownership of the Aircraft.

(emphasis added).

3

Mr. Atwood's son subsequently became certified as a commercial multi-engine pilot, and the flight lessons that Mr. Atwood provided to his son have an estimated value in excess of $100,000. During the flights, Mr. Atwood carried personal property and would often purchase fuel and personal items during stops at various airports. For over 70% of the flights, Mr. Atwood crossed state lines.

On January 4, 2018, the Comptroller assessed Mr. Atwood a sales and use tax for the Aircraft for a total of $2,554.37.[3] In May 2018, the Comptroller issued a Notice of Final Determination after Mr. Atwood filed an application to revise the assessment of the sales and use tax. At the hearing, Mr. Atwood argued to the Comptroller that his use of the Aircraft qualified for an exemption from the sales and use tax pursuant to § 11-208(c)(1) of the Tax Code because the Aircraft was used in interstate commerce. The Comptroller affirmed the assessment, concluding that Mr. Atwood's use of the Aircraft to provide his son flight lessons and to commute to and from work was not interstate commerce and thus did not qualify for an exemption under § 11-208(c)(1). Mr. Atwood then filed a Petition of Appeal of the Comptroller's Notice of Final Determination with the Tax Court, arguing that the Aircraft was used principally in interstate commerce during the first year of ownership and was thus exempt pursuant to § 11-208(c)(1).

The Tax Court held a hearing on August 27, 2019. The Tax Court found that "[t]he statute is clear that it applies to the sale of airplanes that are used principally to

---

[3] The Comptroller assessed Mr. Atwood a tax of $2,040.00, interest in the amount of $310.37 (interest accrual through June 20, 2018), and a penalty of $204.00 for a total of $2,554.37.

4

cross state lines in interstate or foreign commerce." Finding that Mr. Atwood flew the majority of the flights across state lines and that the flight lessons Mr. Atwood provided to his son were a commercial activity, the Tax Court held that the Aircraft qualified for the exemption pursuant to § 11-208(c)(1). The court reasoned that "[e]ducation and training can be a commercial activity. Colleges and other schools are commercial activities, even when they do not charge tuition. . . . Likewise, the training flights for petitioners are a commercial activity." In an order dated September 13, 2019, the Tax Court reversed the Comptroller's assessment of the sales and use tax.

On October 3, 2019, the Comptroller filed a Petition for Judicial Review of the Tax Court's decision with the Circuit Court for Anne Arundel County. The circuit court held a hearing on March 9, 2020. It found that "the Tax Court made the correct determination, that [it] did not make an error in law, [and] there was substantial evidence to support [its] finding." The circuit court affirmed the holding of the Tax Court reversing the Comptroller's assessment of the sales and use tax. This appeal followed.

**STANDARD OF REVIEW**

The decisions of the Tax Court are "subject to the same standards of judicial review as adjudicatory decisions of other administrative agencies." *Carbond, Inc. v. Comptroller of the Treasury*, 247 Md. App. 79, 84 (2020) (quoting *NIHC, Inc. v. Comptroller of the Treasury*, 439 Md. 668, 682 (2014)). Therefore, "on appellate review '[w]e review the decision of the Tax Court, not the ruling of the circuit court.'" *Carbond*, 247 Md. App. at 84 (alteration in original) (quoting *Comptroller of the Treasury v. Johns Hopkins Univ.*, 186 Md. App. 169, 181 (2009)). "We give 'great weight to the Tax

5

Court's interpretation of the tax laws, but review[] its application of case law without special deference.'" *Carbond*, 247 Md. App. at 84-85 (alteration in original) (quoting *NIHC*, 439 Md. at 683).

"A court's role in reviewing an administrative agency adjudicatory decision is narrow; it is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law." *Comptroller of the Treasury v. Taylor*, 465 Md. 76, 86 (2019) (quoting *Comptroller of the Treasury v. Taylor*, 238 Md. App. 139, 145 (2018), *rev'd*, 465 Md. 76 (2019)). "We are also required to construe exemptions narrowly and in instances where there is any doubt, rule 'in favor of the taxing authority.'" *Comptroller of the Treasury v. Martin G. Imbach, Inc.*, 101 Md. App. 138, 151 (1994) (quoting *Chesapeake & Potomac Tel. Co. of Md. v. Comptroller of the Treasury*, 317 Md. 3, 11 (1989)).

## DISCUSSION

I.    **SECTION 11-208(C)(1) OF THE MARYLAND TAX CODE**

The statute at issue, § 11-208(c)(1) of the Tax Code, states "[t]he sales and use tax does not apply to a sale of an aircraft, motor vehicle, railroad rolling stock, or vessel that is *used principally to cross State lines in interstate or foreign commerce*." Tax-Gen. § 11-208(c)(1) (1992, 2016 Repl.) (emphasis added). This exemption to the sales and use

tax is further explained in Code of Maryland Regulations ("COMAR") 03.06.01.26.B.[4]

The language used in COMAR 03.06.01.26.B indicates that aircraft must be involved in

the pickup or delivery of items or passengers to qualify for the interstate commerce

exemption.  *See* COMAR 03.06.01.26.B(1)–(3) (2021).

---

[4] COMAR 03.06.01.26.B, which is titled "Aircraft, Motor Vehicles, Railroad Rolling Stock, and Vessels used in Interstate and Foreign Commerce," states:

> An aircraft, motor vehicle, railroad rolling stock, or vessel is used principally in interstate or foreign commerce if during the first year of its use, or if the use does not extend to 1 year, then during the lesser period of use, any one of the following tests is met:
>
> 1. More than 50 percent of the total mileage traveled is mileage between a pickup or delivery point in one state and a pickup or delivery point in another state or the District of Columbia . . . .
>
> 2. More than 50 percent of all trips between a pickup or delivery point and the next pickup or delivery point, are between a pickup or delivery point in one state and a pickup or delivery point in another state or the District of Columbia . . . .
>
> 3. More than 50 percent of the total days of use are days during which there has occurred or is occurring a trip between a pickup or delivery point in one state and a pickup or delivery point in another state including the District of Columbia . . . .

COMAR 03.06.01.26.B(1)–(3) (2021).  This language is identical to the version of the regulation that was in effect during the audit period from February 8, 2017 to February 7, 2018.

The exemption to the sales and use tax for aircraft used principally in interstate commerce has a long history.[5] The 1947 version of the sales and use tax statute stated in part that the tax does not apply to "[s]ales which are not within the taxing power of [Maryland] under the Constitution of the United States." Md. Code Ann., Art. 81 § 261(f) (Supp. 1947). In former Comptroller Rule 64, the Comptroller interpreted the language of Article 81 to exempt two categories of sales: "(a) Sales or transactions which occur beyond the territorial limits of the State of Maryland" and "(b) *Sales upon which the tax imposes an unreasonable or discriminatory burden on interstate commerce*." Comptroller of the Treasury, Retail Sales Tax Div., Rule 64 (1947) (emphasis added). Former Comptroller Rule 64 further defined the exemption for aircraft engaged in interstate commerce, noting that the exemption applied regardless of whether goods were transported into the State or out of the State. *Id.* When interpreting former Comptroller Rule 64 and the interstate commerce exemption, the Court of Appeals found that aircraft used to transport company employees and customers "across state lines" for company business qualified for the exemption. *W.R. Grace & Co., Davison Chem. Div. v. Comptroller of the Treasury*, 255 Md. 550, 566-67 (1969). Principally, former

---

[5] In reviewing the legislative history of a statute, courts "may . . . analyze the statute's 'relationship to earlier and subsequent legislation, and other material that fairly bears on the fundamental issue of legislative purpose or goal, which becomes the context within which we read the particular language before us in a given case.'" *Amaya v. DGS Constr, LLC*, 249 Md. App. 462, 468-69 (2021) (quoting *Blackstone v. Sharma*, 461 Md. 87, 114 (2018)). Courts "may also 'consider the consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense.'" *Amaya*, 249 Md. App. at 469 (quoting *Spangler v. McQuitty*, 449 Md. 33, 50 (2016)).

Comptroller Rule 64 was adopted "to protect the shipping industry from having to pay sales tax for repair of their vessels. However, all aircraft, railroad rolling stock, and trucks [were] shielded by Rule 64 as well." Dep't of Fiscal Servs., Revised Fiscal Note, H.B. 211 (1977).

The exemption to the sales and use tax for aircraft used in interstate commerce as defined in former Comptroller Rule 64 was codified in 1977 and provided that "[s]ales of aircraft . . . which will be *used principally in the movement of passengers or freight, or both, in interstate commerce*" are exempt from sales and use tax. Md. Code Ann., Art. 81, § 326(gg) (1977) (emphasis added). However, "the Revisor's notes do not indicate that the General Assembly intended to expand the scope of the exemption to include '*all* interstate commerce [that] is involved in the movement of passengers and freight.'" *Imbach*, 101 Md. App. at 151 (alteration in original) (finding that the exemption required the *movement* of passengers and freight in order to be applicable). As set forth in the Revised Fiscal Note, the statute "simply makes Rule 64 law rather than a rule." Dep't of Fiscal Servs., Revised Fiscal Note, H.B. 211 (1977). Furthermore, then Delegate Benjamin Cardin, in his role as chairman of the House Ways and Means Committee, requested the Attorney General's Office "to draft proposed statutory language which would have the effect of preserving the tax exemption conferred upon interstate carriers by the Comptroller's Rule 64." Letter from Stephen M. Cordi, Assistant Att'y Gen., Comptroller of the Treasury, to Hon. Benjamin L. Cardin, Chairman, House Ways & Means Comm. (Jan. 31, 1977).

9

In reviewing the legislative history of Article 81 § 326(gg) (1971), this Court has recognized that the Legislature intended to merely codify former Comptroller Rule 64, not to change its scope. *See Imbach*, 101 Md. App. at 150 (explaining that "[t]he Bill File indicates that the [General Assembly] . . . considered this section a mere statutory codification of Comptroller['s] Rule 64" (footnote omitted)); *United Parcel Serv., Inc. v. Comptroller of the Treasury*, 69 Md. App. 458, 471 (1986) (stating that the Legislature's purpose "in enacting § 326(gg) was simply to preserve and clarify the existing scope of the tax exemption under Rule 64"). This Court found, while interpreting former Comptroller Rule 64, that the "taxpayer must be 'regularly engaged in interstate . . . commerce'" and the vehicles used to transport goods or passengers do not necessarily have to cross state lines as long as the goods or passengers cross state lines. *United Parcel Serv.*, 69 Md. App. at 471 (finding that the Tax Court correctly determined that the exemption applied to delivery vans, which delivered goods primarily within the State, because the goods themselves crossed state lines and were thus part of interstate commerce).

In 1988, the sales and use tax statute was recodified but retained the exemption for aircraft used principally in interstate commerce. Md. Code Ann., Tax-Gen. § 11-208(c)(1) (1988). The recodified language of the exemption states "[t]he sales and use tax does not apply to a sale of an aircraft, motor vehicle, railroad rolling stock, or vessel that is *used principally in interstate or foreign commerce*." *Id.* (emphasis added). The Revisor's Note to § 11-208(c)(1) emphasizes that there was no substantive change in the

meaning of the statute after recodification despite the change in language.[6]  Md. Code

Ann., Tax-Gen. § 11-208(c)(1) (1988), Revisor's Note; *see also* Dep't of Fiscal Servs.,

Fiscal Note, S.B. 1 (1988) (stating that the Tax General Article "only restate[d] and

reorganize[d] provisions of current law" and that "[s]tate revenues are not affected").

Maryland case law further supports the notion that the meaning of a statute does not

change after recodification.  *See K. Hovnanian Homes of Md., LLC v. Mayor of Havre de

Grace*, 472 Md. 267, 291 n.14 (2021) (stating that "recodification of statutes is presumed

to be for the purpose of clarity rather than change of meaning and, thus, even a change in

the phraseology of a statute by a codification will not ordinarily modify the law unless

the change is so radical and material that the intention of the Legislature to modify the

law appears unmistakably from the language of the Code").

The codified exemption to the sales and use tax was modified once again in 1992

to add the phrase "to cross state lines."  1992 Md. Laws, 1st Spec. Sess., ch. 2, § 2.  The

current version of the exemption has remained unchanged since 1992 and states "[t]he

sales and use tax does not apply to a sale of an aircraft, motor vehicle, railroad rolling

stock, or vessel that is *used principally to cross State lines in interstate or foreign

commerce.*"  Md. Code Ann., Tax-Gen. § 11-208(c)(1) (1992) (emphasis added).  After

the recodification, this Court found that the exemption did not apply to vessels used by a

marine construction company to repair bridges and piers wholly within the State because

---

[6] The Revisor's Note states that the phrase "in the movement of passengers or freight, or both" was removed as unnecessary because it is inherent in the term "interstate commerce."  Md. Code Ann., Tax-Gen. § 11-208(c)(1) (1988), Revisor's Note.

11

they were "not used in the 'movement of passengers or property.'" *Imbach*, 101 Md. App. at 150 (quoting *United Parcel Serv.*, 69 Md. App. at 472).

It is plain from the statutory history of § 11-208(c)(1) of the Tax Code that the Legislature intended the exemption to the sales and use tax to apply to aircraft used to transport goods or passengers in interstate commerce. Additionally, "we must 'read the statute as a whole to ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory.'" *Daughtry v. Nadel*, 248 Md. App. 594, 612 (2020) (quoting *Berry v. Queen*, 469 Md. 674, 687 (2020)).

## II. MR. ATWOOD DID NOT USE THE AIRCRAFT PRINCIPALLY IN INTERSTATE COMMERCE AND THE EXEMPTION TO THE SALES AND USE TAX DOES NOT APPLY TO ITS PURCHASE.

Mr. Atwood argues that no business or commercial purpose is necessary for the use of an aircraft to qualify for the interstate commerce exemption to the Maryland sales and use tax. He contends that the term "interstate commerce" "would clearly include any trips across state lines regardless of their underlying purpose." Mr. Atwood cites to *Gibbons v. Ogden*, 22 U.S. 1 (1824), *W.R. Grace & Co., Davison Chemical Division v. Comptroller of the Treasury*, 255 Md. 550 (1969), and *United Parcel Service, Inc. v. Comptroller of the Treasury*, 69 Md. App. 458 (1986) for this assertion. He fails to note, however, that in both *W.R. Grace* and *United Parcel Service* the aircraft and vehicles in question were used to transport goods or passengers as part of the operation of businesses that were engaged in interstate commerce. *See W.R. Grace*, 255 Md. at 552; *United Parcel Serv.*, 69 Md. App. at 461-62. While the definition of "interstate commerce" set out in *Gibbons* is construed broadly in terms of the United States Government's ability to

12

regulate, we must interpret the term as used by the General Assembly when it wrote the Tax Code as discussed above in Section I.

Mr. Atwood further argues that the changes to the statute during recodification support his argument that no business purpose is necessary for the exemption to apply. As Mr. Atwood acknowledges in his brief, however, the 1988 Revisor's Note states that the phrase "in the movement of passengers or freight, or both" was removed as superfluous language without changing the meaning of the statute because the removed language is inherent in the term "interstate commerce." Tax-Gen. § 11-208(c)(1) (1988), Revisor's Note. We disagree with Mr. Atwood's interpretation of § 11-208(c)(1) that all that is necessary for the exemption to apply is for the Aircraft to cross state lines. The statute's plain language, its history, and the applicable case law require the person seeking the exemption to have a business or commercial purpose. *See, e.g.*, *W.R. Grace*, 255 Md. at 566-68; *United Parcel Serv.*, 69 Md. App. at 471.

Mr. Atwood purchased a personal aircraft for a personal purpose—to teach his son to fly. As stipulated by the parties, "[t]here was no business purpose for the friends and family flying on the airplane," "[n]one of the flights involved the movement of freight or cargo," and "[n]one of the flights involved the movement of passengers for a commercial or business purpose." The use of the Aircraft was not in the course of commercial or business activity and, therefore, it was not used principally to cross state lines in interstate *commerce*.

We hold that the Tax Court erred in applying the exemption in § 11-208(c)(1) of the Tax Code to Mr. Atwood's purchase of the Aircraft because he did not use the

13

Aircraft principally in interstate commerce.  Accordingly, we reverse the decision of the

Circuit Court for Anne Arundel County with instructions as stated in the below order.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY REVERSED; CASE REMANDED TO THE CIRCUIT COURT WITH INSTRUCTIONS TO REVERSE THE FINAL DECISION OF THE TAX COURT AND REMAND THE CASE TO THE TAX COURT WITH INSTRUCTIONS TO ENTER A NEW FINAL DECISION AFFIRMING THE ASSESSMENT OF THE COMPTROLLER INCLUDING ANY ACCRUED INTEREST. COSTS TO BE PAID BY APPELLEE.**