*Leonard Poe v. IESI MD Corporation*, No. 559, Sept. Term 2018.  Opinion by Arthur, J.

**MARYLAND WAGE AND HOUR LAW—OVERTIME FOR "DAY-RATE" EMPLOYEES**

Under the Maryland Wage and Hour Law and its implementing regulations, eligible employees are entitled to an overtime wage of at least 1.5 times the "usual hourly wage" or "regular hourly rate" for each hour that the employees work in excess of 40 hours during one workweek.  The "regular hourly rate" is determined by dividing the total compensation for employment in any workweek by the total number of hours worked in that workweek.  Maryland has no statute or regulation expressly stating how to calculate overtime pay when an employee receives compensation at a "day rate" (i.e., a fixed amount of money per day worked, without regard to the number of hours worked).

A day-rate employee is entitled to extra half-time pay (i.e., an extra 50% of the regular hourly rate) for each hour worked in excess of 40 in one workweek.  The employee has already received 100% of the regular hourly rate for all hours worked; the fixed day rate wages compensates the employee for all hours worked, including the overtime hours.  This result is identical to the overtime calculation for day-rate employees under the federal Fair Labor Standards Act.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 559

September Term, 2018

_____

LEONARD POE

v.

IESI MD CORPORATION

_____

Arthur,
Reed,
Zarnoch, Robert A.
  (Senior Judge, Specially Assigned),

JJ.*

_____

Opinion by Arthur, J.

_____

Filed:  November 20, 2019

*Judge Steven B. Gould did not participate in the Court's decision to designate this opinion for publication pursuant to Md. Rule 8-605.1.

 Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Under Md. Code (1991, 2016 Repl. Vol., Supp. 2019), § 3-415 of the Labor and Employment Article ("LE"), "each employer shall pay an overtime wage of at least 1.5 times the usual hourly wage." This case presents the question of how the overtime wage is computed when an employee is not paid by the hour.

Appellant Leonard Poe was employed by appellee IESI MD Corp., a trash-hauling business. IESI paid Poe a "day rate" – i.e., it paid him a specified amount of money per day rather than per hour of work. Day-rate compensation is common in the trash-hauling industry, because it motivates employees to work quickly and efficiently: the sooner the employees finish the job, the greater their rate of pay.

When Poe worked more than 40 hours in a week, he was entitled to overtime compensation under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and the Maryland Wage and Hour Law, LE §§ 3-401 to -431. IESI computed Poe's overtime compensation by employing 29 C.F.R. § 778.112, a longstanding federal regulation that dictates the method for computing overtime compensation for day-rate employees under federal law.

Poe disputed IESI's calculations. He filed suit, claiming that the federal regulation was inconsistent with the Maryland Wage and Hour Law and that, in relying on the federal regulation, IESI had understated the amount of overtime compensation that he was due under State law. The Circuit Court for Prince George's County granted IESI's motion for summary judgment.

The circuit court placed its decision on two grounds. First, the court reasoned that the federal regulation is consistent with Maryland law. Second, the court reasoned that,

under the so-called Motor Carrier Act exemption in LE § 3-415(b)(1), the Maryland Wage and Hour Law did not apply to IESI.

Poe appealed. He presents the following questions:

1. Did the trial court err by granting summary judgment against Mr. Poe based upon a federal Department of Labor regulation permitting the payment of a "half-time" overtime rate, where Mr. Poe brings no claim under federal law, and where Maryland law mandates that non-exempt employees like Mr. Poe *shall* receive 1.5 times their regular rate of pay for overtime hours?

2. Did the trial court err by granting summary judgment against Mr. Poe based upon the application of the Motor Carrier Act exemption to the Maryland Wage and Hour Law, where Mr. Poe did not engage in any interstate commerce during the relevant time period, or where any interstate activity was *de minimis*?

We shall affirm the judgment on the ground that IESI's computation of Poe's overtime compensation did not violate the Maryland Wage and Hour Law. We do not reach the separate question of whether IESI is immune from the Maryland Wage and Hour Law under the Motor Carrier Act exemption.

## STANDARD OF REVIEW

When a party moves for summary judgment, the court "shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." Md. Rule 2-501(f). In this case, the parties appear to agree that there is no genuine dispute as to any material fact. Consequently, the only issue before us is whether the circuit court correctly concluded that IESI was entitled to judgment as a matter of law. "[T]his Court conducts a de novo

2

review to determine whether the circuit court's conclusions were legally correct." *Trim v. YMCA of Cent. Maryland*, 233 Md. App. 326, 332 (2017).

**THE PERTINENT STATUTES AND REGULATIONS**

In 1938 Congress passed the Fair Labor Standards Act. Among its many achievements, the Act created a federal right to overtime compensation for certain employees who were engaged in interstate commerce. At present, that right is expressed in 29 U.S.C. § 207(a)(2)(C), which generally prohibits an employer from employing an employee for a workweek longer than 40 hours "unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." "The statute contains no definition of regular rate of pay and no rule for its determination." *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 460 (1948).

LE § 3-415(a) states the general rule for overtime compensation under Maryland law: "Except as otherwise provided in this section, each employer shall pay an overtime wage of at least 1.5 times the usual hourly wage, computed in accordance with § 3-420 of this subtitle." LE § 3-420(a) instructs us that, "[e]xcept as otherwise provided in this section, an employer shall compute the wage for overtime under § 3-415 of this subtitle on the basis of each hour over 40 hours that an employee works during 1 workweek." Read together, the two Maryland statutes generally require employers to pay an overtime wage equal to "at least 1.5 times the usual hourly wage" for "each hour over 40 hours that an employee works" in a workweek. Like the federal statute, the Maryland statutes contain no definition of "usual hourly wage" and no rule for its determination.

3

The Maryland Department of Labor has adopted two regulations that bear on the calculation of overtime compensation under Maryland law. First, COMAR 09.12.41.19.A defines the "[r]egular hourly rate" to mean "the usual hourly rate," a term similar to "the usual hourly wage" in LE § 3-415(a). COMAR 09.12.41.19.B goes on to state that "[t]he regular hourly rate is determined by dividing the total compensation for employment in any workweek by the total number of hours worked in that workweek." Second, COMAR 09.12.41.14.B echoes the Maryland statutes by stating, in pertinent part, that "[c]ompensation for hours worked in excess of 40 hours per workweek is computed at 1-1/2 times the regular hourly rate at which the employee is employed."

The State and federal statutes are easy to apply to a conventional employment agreement, in which an employee is paid a fixed hourly rate. Employment contracts, however, "take many forms." *Bay Ridge Operating Co. v. Aaron*, 334 U.S. at 460.

> The rate of pay may be by the hour, by piecework, by the week, month or year, and with or without a guarantee that earnings for a period of time shall be at least a stated sum. The regular rate may vary from week to week. The employee's hours may be regular or irregular. From all such wages the regular hourly rate must be extracted.

*Id.* at 460-61 (citations omitted).

More than 50 years ago, in 1968, the United States Department of Labor adopted a regulation interpreting how an employer must calculate overtime compensation, under the Fair Labor Standards Act, for employees who are paid a fixed sum of money for a day's work, regardless of how many hours it takes them to do that work. That regulation, 29 C.F.R. § 778.112, states:

4

If the employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job, and if he receives no other form of compensation for services, his regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked. He is then entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the workweek.

The following example illustrates how 29 C.F.R. § 778.112 operates in practice. First, assume that an employee is paid a day rate of $200 per day, or $1000 over the course of a five-day week. Assume, further, that the employee works five days and logs 50 hours in a given week. Under the federal regulation, the employer would compute the "regular rate" by dividing $1000 ("all the sums received at such day rates or job rates in the workweek") by 50 ("the total hours actually worked"), which equals $20 per hour. The employee would then be entitled to an additional $10 per hour ("extra half-time pay" of half the "regular rate" of $20), or $100 in total, for the 10 hours that he or she worked "in excess of 40." In total, therefore, the employee would be entitled to $1100, or $100 over and above what he or she would receive through the day rate alone.

It may not be immediately apparent how 29 C.F.R. § 778.112 can satisfy the federal statutory requirement of overtime compensation of "not less than one and one-half times the regular rate at which [the employee] is employed" (29 U.S.C. § 207(a)(2)(C)) when the regulation requires only "extra half-time pay at [the regular] rate for all hours worked in excess of 40 in the workweek." If the employee's "regular rate" is $20 per hour and if the employee worked 10 hours of overtime, why isn't the employer liable for $300 in overtime compensation ($20 x 1.5 x 10) *on top of* the $1000 in day-rate pay?

5

The answer is that, when employees have been paid a day rate, they have already been compensated at their full "regular rate" for the hours that they have worked in excess of 40:

> "The fixed salary compensates the employee for all his hours, the overtime ones included. He therefore receives 100% of his regular rate for each hour that he worked."

*Dufrene v. Browning-Ferris, Inc*., 994 F. Supp. 748, 753 (E.D. La. 1998) (quoting *Condo v. Sysco Corp*., 1 F.3d 599, 605 (7th Cir. 1993)), *aff'd*, 207 F.3d 264 (5th Cir. 2000).

For that reason, the employee "'is entitled only to an additional fifty percent of [the] regular rate for the hours that he [or she] worked in excess of forty.'" *Id*. (quoting *Condo v. Sysco Corp*., 1 F.3d at 605). Under our example, the employee receives 1.5 times the "regular rate" of $20 per hour when he or she works 50 hours, is paid day-rate compensation of $1000 (or $200 a day), and gets an additional $100 ($20 x .5 x 10) in overtime compensation. In economic terms, the employee receives $20 per hour (or $800) for the first 40 hours and $30 per hour (or $300) for the 10 hours in excess of 40, for a total of $1100.

Under the method prescribed by the United States Department of Labor, "the greater number of hours an employee works, the lower his regular rate will be and the less he will receive per overtime hour." *Condo v. Sysco Corp*., 1 F.3d at 605. But this is in the nature of any arrangement in which the rate of compensation rises or falls as a function of the amount of time that it takes to do the job. *See Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 580 (1942) (recognizing that, when an employee is paid a

6

weekly wage but works variable or fluctuating hours, "the longer the hours the less the rate and the pay per hour").

Maryland has not adopted a statute or regulation that, like 29 C.F.R. § 778.112, expressly instructs employers how to compute overtime compensation for day-rate employees. This case requires us to examine the implications of the absence of any such statute or regulation. Does it mean that Maryland law forbids employers from using the federal regulation in computing overtime compensation for employees who are paid a day rate and that employers must use some other formula, more advantageous to employees? Or is the federal regulation persuasive authority as to how employers must compute overtime compensation under the related provisions of Maryland law?

## ANALYSIS

Maryland appellate courts have said that the Maryland Wage and Hour Law is the "State parallel" to the Fair Labor Standards Act (*Newell v. Runnels*, 407 Md. 578, 649 (2009); *Friolo v. Frankel*, 373 Md. 501, 513 (2003)) and "the state's equivalent" (*Campusano v. Lusitano Constr. LLC*, 208 Md. App. 29, 37 (2012)) of the federal statute. *See also Friolo v. Frankel*, 438 Md. 304, 307 (2014) (describing the Maryland Wage and Hour law as "the Maryland counterpart to the Federal Fair Labor Standards Act"); *Friolo v. Frankel*, 373 Md. at 515 (observing that "[t]he Wage and Hour Law shares the benevolent purpose of its Federal partner, the Fair Labor Standards Act"). Thus, for example, in deciding whether a defendant was an "employer" for purposes of the Maryland Wage and Hour Law, the Court of Appeals expressly adopted the four-factor

7

"economic reality" test that federal courts use to determine whether a person is an "employer" under the Fair Labor Standards Act. *Newell v. Runnells*, 407 Md. at 649-53.

Federal courts, applying Maryland law, have also recognized the similarity between the State and federal statutes. *See*, *e.g.*, *Schilling v. Schmidt Baking Co.*, 876 F.3d 596, 603 (4th Cir. 2017) (stating that "[t]he [Fair Labor Standards Act] and the Maryland statutory schemes are largely congruent, and ordinarily claims brought pursuant to the [Maryland Wage and Hour Law] succeed or fail together with claims brought under the [Fair Labor Standards Act]"); *Mould v. NJG Food Serv., Inc.*, 37 F. Supp. 3d 762, 774 (D. Md. 2014) (holding that proof of a violation of the Fair Labor Standards Act amounted to proof of a violation of the Maryland Wage and Hour Law, where the pertinent language of the Maryland statute was "nearly identical" to that of the federal statute); *Brown v. White's Ferry, Inc.*, 280 F.R.D. 238, 242 (D. Md. 2012) (stating that the Maryland Wage and Hour claim in that case stood or fell on the success of the Fair Labor Standards Act claim); *Turner v. Human Genome Sci., Inc.*, 292 F. Supp. 2d 738, 744 (D. Md. 2003) (stating that because the requirements of the state law "mirror those of the federal law," the state-law claim in that case "stands or falls on the success" of the federal claim).

It is true that, in some instances, the language of the Maryland statute or regulations may diverge from that of its federal counterpart, so that State and federal law lead to different results. For example, the time spent commuting to and from work is not compensable under federal law, but it may be compensable under a COMAR regulation that applies to certain State employees who travel between home and a work site other

8

than the office. *Comptroller v. Miller*, 169 Md. App. 321, 351-54 (2006), *aff'd*, 398 Md. 272 (2007). On the other hand, the United States district court has held that a local government employee can bring a claim for overtime compensation under federal law but not under State law, because a governmental unit is not an "employer" within the meaning of LE § 3-401. *See Koelker v. Mayor & City Council of Cumberland*, 599 F. Supp. 2d 624, 638-39 (D. Md. 2009).

In this case, the relevant provisions are substantially similar under both State and federal law. LE § 3-415(a) generally requires employers to pay an "overtime wage of at least 1.5 times the *usual hourly wage*." (Emphasis added.) COMAR 09.12.41.14.B implements that requirement by directing that "[c]ompensation for hours worked in excess of 40 hours per workweek is computed at 1-1/2 times *the regular hourly rate*," which COMAR 09.12.41.19.A defines as "*the usual hourly rate*." (Emphasis added.) The Fair Labor Standards Act is to similar effect, in that it generally requires employers to pay overtime compensation "at a rate not less than one and one-half times *the regular rate*" at which the employee is employed for every hour worked in excess of 40. 29 U.S.C. § 207(a)(2)(C). (Emphasis added.) The parties have given us no reason to conclude that "the regular rate" in the federal statute means something different from the "usual hourly wage" in the Maryland statute or the "regular" or "usual" "hourly rate" in the COMAR regulations.

In 29 C.F.R. § 778.112, the federal regulation concerning the computation of overtime compensation for employees who are paid a day rate, the Department of Labor interpreted the requirements of the Fair Labor Standards Act. It has been held that the

9

regulation is a permissible interpretation of the Act and, hence, that it is entitled to judicial deference. *Dufrene v. Browning-Ferris, Inc*., 207 F.3d 264, 268 (5th Cir. 2000). Because the Maryland statute is the counterpart to the Fair Labor Standards Act, the federal regulation is, therefore, persuasive authority as to the correct interpretation of Maryland law. *See Immanuel v. Comptroller*, 449 Md. 76, 89 (2016) (stating that interpretations of the federal Freedom of Information Act were persuasive authority in interpreting the State counterpart, the Public Information Act). The persuasive effect of the federal regulation is only enhanced because it has been in effect for half a century and has undoubtedly been relied upon by numerous employers in Maryland during that time. *See Maryland Office of People's Counsel v. Maryland Pub. Serv. Comm'n*, 226 Md. App. 483, 501 (2016) (noting that the relevant factors in deciding the weight given to an agency's interpretation of a statute include "whether the interpretation 'has been applied consistently and for a long period of time'") (quoting *Office of People's Counsel v. Maryland Pub. Serv. Comm'n*, 355 Md. 1, 17 (1999)).

We see no basis in the language of the Maryland statutes or regulations to conclude that Maryland law prohibits employers from relying on the federal regulation to compute overtime compensation for employees who are paid a day rate. When the employer pays the employee by the day, the federal regulation generates the equivalent of "an overtime wage of at least 1.5 times the usual hourly wage," as required by LE § 3-415(a). It does so because the day rate pays the employees 100 percent of the regular hourly rate for all of their hours, the overtime ones included. *Dufrene v. Browning-Ferris, Inc*., 994 F. Supp. at 753. To ensure that the employees receive the remaining .5

10

times the usual hourly wage, the employer need pay only one-half (or 50 percent) of the regular hourly rate for the hours worked in excess of 40. *Id.* An employer, therefore, does not violate the Maryland Wage and Hour Law if it correctly employs 29 C.F.R. § 778.112 to calculate the overtime compensation that it owes to employees who are paid a day rate.

In advocating a contrary conclusion, Poe principally argues that because Maryland has not expressly adopted 29 C.F.R. § 778.112, Maryland law prohibits the use of that formula. He is incorrect. The federal regulation interprets the requirements of a federal statute that parallels a Maryland statute on exactly the same subject. The federal regulation, therefore, informs the analysis of what the Maryland statute means.

Poe also argues that Maryland law cannot parallel the federal regulation because Maryland has no comparable regulation. It is, however, unnecessary for Maryland to adopt a regulation that duplicates the federal regulation for the federal regulation to assist in the interpretation of what Maryland law requires. Once again, the federal regulation is a permissible interpretation of the Fair Labor Standards Act and, as such, is entitled to judicial deference as to the meaning of that Act. In this case, the relevant provisions of the Fair Labor Standards Act mirror those of the Maryland Wage and Hour Law. Therefore, the federal regulation interpreting the federal statute, even if not controlling, deserves consideration when a court interprets the Maryland statute. The federal regulation can shed light on the meaning of the Maryland statute even if Maryland has adopted no comparable regulation.

11

Poe goes on to argue that the General Assembly has not authorized the Commissioner of Labor and Industry to adopt a regulation like the federal day-rate regulation. He relies upon LE § 3-410, which states that, "[i]n addition to any regulation specifically required by this subtitle, regulations that the Commissioner adopts to carry out this subtitle may include" a number of enumerated topics other than overtime compensation for employees who are paid a day rate.[1]

It is highly debatable whether the relevant language in § 3-410 ("may include") actually limits the Commissioner's abilities in the way that Poe posits. *See* Md. Code (2014, 2019 Repl. Vol.), § 1-110 of the General Provisions Article (stating that "'[i]ncludes' or 'including' means includes or including by way of illustration and not by way of limitation[]"). Indeed, even though § 3-410 does not expressly authorize a

---

[1] In full, § 3-410 states:

In addition to any regulation specifically required by this subtitle, regulations that the Commissioner adopts to carry out this subtitle may include:

(1) definitions of the terms "administrative capacity" "executive capacity," "professional capacity," and "outside salesman";

(2) a scale of wages that is suitable for learners and apprentices but is at least 80% of the minimum wage under this subtitle; and

(3) a wage for a special case or class of case if the Commissioner finds the wage appropriate to:

(i) avoid undue hardship;

(ii) prevent the curtailment of employment opportunity; and

(iii) safeguard the minimum wage under this subtitle.

regulation concerning the method for computing the "usual hourly wage" in LE § 3-415(a), the Commissioner has adopted a regulation that largely follows the federal formula on that subject. *Compare* COMAR 09.12.41.19.B (stating that "[t]he regular hourly rate is determined by dividing the total compensation for employment in any workweek by the total number of hours worked in that workweek[]"), *with* 29 C.F.R. § 778.112 (stating that the "regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked[]"). But even if the Commissioner were somehow prohibited from adopting a regulation concerning the computation of overtime compensation for employees who are paid a day rate, employers, employees, litigants, and courts could still look to the federal regulation, as we have, for persuasive authority as to how to interpret the analogous Maryland statutes on that subject.

Poe cites a number of Pennsylvania cases concerning the computation of overtime compensation for employees who work a fluctuating workweek (i.e., employees who receive a fixed weekly salary, but do not work a fixed number of hours in any given week). *Verderame v. RadioShack Corp.*, 31 F. Supp. 3d 702, 703-05 (E.D. Pa. 2014); *Foster v. Kraft Foods Global, Inc.*, 285 F.R.D. 343, 345-46 (W.D. Pa. 2012); *Cerutti v. Frito Lay, Inc.*, 777 F. Supp. 2d 920, 945 (W.D. Pa. 2011); *see also Chevalier v. General Nutrition Ctrs., Inc.*, 177 A.3d 280 (Pa. Super. 2017), *appeal granted*, 189 A.3d 386 (2018). Under a regulation interpreting the Fair Labor Standards Act, the overtime premium for these employees is calculated in the same way as it is for employees who are paid a day rate: the employee must receive "extra compensation, in addition to such

13

salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay." 29 C.F.R. § 778.114(a). The Pennsylvania courts have held, however, that that federal regulation "cannot be reconciled" with Pennsylvania law. *See*, *e.g.*, *Verderame v. RadioShack Corp.*, 31 F. Supp. 3d at 707. In reaching that decision, the courts have reasoned that a Pennsylvania regulation permits the computation of overtime at half the regular rate of pay in some cases (including the case of employees who are paid a day rate), but not in the case of employees who work a fluctuating workweek. *Id.* Because the regulators have expressly authorized the use of the federal formula in some circumstances but not in others, the courts infer that the formula is prohibited where it has not been expressly authorized. *Id.* (citing *Foster v. Kraft Food Global, Inc.*, 285 F.R.D. at 345). We decline to follow the Pennsylvania decisions, because they are based on the unique regulatory structure of Pennsylvania law.[2]

Poe is circumspect about his alternative method for computing overtime compensation and about how it comports with the Maryland statutes and regulations. In one instance, he inflates his "total compensation" by including the disputed amount of overtime compensation that the employer already paid. In so doing, he awards himself overtime on overtime, a concept that the General Assembly could not have intended. *See Bay Ridge Operating Co. v. Aaron*, 334 U.S. at 464 (stating that "[t]o permit overtime

---

[2] Both parties cite a number of unreported federal decisions in support of their positions. We do not consider those decisions, because "'it is the policy of this Court in its opinions not to cite for persuasive value any unreported federal or state court opinion.'" *Margolis v. Sandy Spring Bank*, 221 Md. App. 703, 718 n.10 (2015) (*quoting Kendall v. Howard County*, 204 Md. App. 440, 445 n.1, *aff'd*, 431 Md. 590 (2013)).

premium to enter into the computation of the regular rate would be to allow overtime premium on overtime premium—a pyramiding that Congress could not have intended[]").  In another instance, his computation of 150 percent of the usual hourly rate ignores the fact that the day rate has already compensated him for 100 percent of the usual hourly rate for all of the hours that he worked, including the hours in excess of 40.  By adding another 100 percent to the 100 percent that he has already received, Poe overstates the amount of the overtime compensation to which he is entitled under Maryland law.

In summary, we are unpersuaded by Poe's arguments that Maryland law tacitly forbids Maryland employers from relying on 29 C.F.R. § 778.112 in computing the amount of overtime compensation that they owe to employees who are paid a day rate.  We hold that the federal regulation, which interprets the requirements of the Fair Labor Standards Act, is consistent with the requirements of the analogous provisions in the Maryland Wage and Hour Law and the regulations adopted thereunder.  Consequently, we affirm the entry of summary judgment in favor of the employer, IESI, and against Poe.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**