*Mario Ernesto Amaya, et al. v. DGS Construction, LLC, et al.*
No. 1857, Sept. Term 2019
Opinion by Shaw Geter, J.

**Statutes**

Maryland can adopt an amendment to a federal statute, where the Legislature has enacted a state's equivalent of the federal statute, without specifically expressing that we have done so.

**Statutes**

Incorporating statutory provisions by reference, partially or entirely, into legislation is an acceptable practice on both the state and federal levels unless prohibited by constitutional provisions. When passed, the incorporated act becomes a part of the incorporating legislation, and it is as if the incorporated act was explicitly written into the law.

**Labor and Employment**

The Maryland Wage and Hour Law and its regulations are interrelated parts of a statutory scheme that includes the Fair Labor Standards Act, Portal-to-Portal Act amendments and accompanying regulations as they relate to an employee's principal activity.

**Labor and Employment**

To determine what constitutes a worksite, courts must examine not whether the employee was required to report to a location, but whether the employee performed part of their job function at the location.

Circuit Court for Prince George's County
Case No. CAL17-26383

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1857

September Term, 2019

_____

MARIO ERNESTO AMAYA, ET AL.

v.

DGS CONSTRUCTION, LLC, ET AL.

_____

Kehoe,
Beachley,
Shaw Geter,

JJ.

_____

Opinion by Shaw Geter, J.

_____

Filed:  February 24, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This is an appeal from an order of the Circuit Court for Prince George's County granting appellees' motion for summary judgment and denying appellants' motion for partial summary judgment. Appellants timely appealed and present the following questions for our review:

1. Did the circuit court err in granting Appellees' motion for summary judgment on Appellants' Maryland state law claims based upon the Portal-to-Portal Act, contrary to the requirements under the Maryland Wage and Hour Law and the Maryland Wage Payment and Collection Law?

2. Did the circuit court err in denying Appellant's motion for partial summary judgment that Appellees were liable for unpaid wages for time spent waiting for buses and traveling between two worksites as required under COMAR § 09.12.41.10?

For reasons discussed below, we conclude there was no error and we affirm.

## BACKGROUND

Appellants, Mario Ernesto Amaya and Jose Norland Gonzalez,[1] are carpenters who performed construction work for appellees, DGS Construction, LLC d/b/a Schuster Concrete Construction and Daniel G. Schuster, the CEO of DGS, a subcontractor on the construction site of the MGM National Harbor resort and casino located in Prince George's County, Maryland, in 2015-16.[2] Appellees required appellants to gain access to the MGM site by parking at the Rosecroft Raceway and then riding a shuttle bus provided by Whiting-

---

[1] Jose Amadeo Castillo also filed suit in the initial complaint but was removed as a named Plaintiff.

[2] DGS Construction, LLC d/b/a Schuster Concrete Construction was a concrete subcontractor of the general contractor Whiting-Turner.

Turner, the general contractor, at no cost to appellants.[3]  Appellants went through security and clocked-in upon reaching the MGM.  At the end of their shifts, appellants were required to ride a shuttle back to their vehicles parked at Rosecroft.

Appellants were not compensated for wait and shuttle travel time or time spent passing through security upon entry to, or departure from, the MGM.  The average length of uncompensated time was two hours, which was not recorded by appellees.  During the transit time frame, appellants did not receive work directives or instructions, load or maintain tools or equipment, don or doff protective or specialty equipment or perform any construction work.  All work was performed at the MGM.

Appellants filed a Complaint and Jury Demand in the Circuit Court for Prince George's County on September 15, 2017, and an Amended Complaint thereafter.  Appellees filed a Motion to Dismiss on April 18, 2018, which was denied by the court.  Appellees then filed an Answer.  Appellants filed a Motion for Class Certification on February 15, 2019.  The court bifurcated the case, reserving ruling on the issue of class certification until after a trial on the merits.  Appellees filed a Motion for Summary Judgment and appellants filed a Motion for Partial Summary Judgment and Request for Hearing; both parties filed their respective oppositions.  Following a hearing on August 22, 2019, the court took the matter under advisement and issued its memorandum opinion and order on November 7, 2019, granting appellees' Motion for Summary Judgment and

---

[3] Rosecroft Raceway is located at 6336 Rosecroft Drive, Fort Washington, Maryland, 20744.  Whiting-Turner directed subcontractor employees to park at Rosecroft Raceway and ride shuttle busses to the MGM site.

2

denying appellants' Motion for Partial Summary Judgment. The court found that "because the General Assembly chose to graft the definition of employ directly from FLSA into the [Maryland Wage and Hour Law (MWHL)], . . . the interpretative guidance . . . imposed by the existing Portal-to-Portal Act was also grafted into the MWHL." The court held that appellants did not perform "work" at Rosecroft, and thus, Rosecroft was not a worksite for the purposes of the MWHL.

### STANDARD OF REVIEW

Under Maryland Rule 2-501, the grant of a motion for summary judgment is appropriate when "there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." "On review of an order granting summary judgment, our analysis 'begins with the determination [of] whether a genuine dispute of material fact exists; only in the absence of such a dispute will we review questions of law.'" *Koste v. Town of Oxford*, 431 Md. 14, 24–25 (2013) (quoting *D'Aoust v. Diamond*, 424 Md. 549, 574 (2012)) (citations omitted). "The standard of review of a trial court's grant of a motion for summary judgment on the law is *de novo*, that is, whether the trial court's legal conclusions were legally correct." *Id.* (quoting *Messing v. Bank of Am., N.A.*, 373 Md. 672, 684 (2003)).

There are no disputes of material facts in the case before us. Rather, the parties' dispute revolves solely around questions of law, i.e., statutory construction. Therefore, we shall consider whether the circuit court's grant of summary judgment in favor of appellee was proper as a matter of law.

Our primary goal in statutory construction is "to discern the legislative purpose, the

3

ends to be accomplished, or the evils to be remedied by a particular provision, be it statutory, constitutional or part of the Rules." *Doe v. Montgomery County Bd. of Elections*, 406 Md. 697, 712 (2008) (quoting *Barbre v. Pope*, 402 Md. 157, 172 (2007)). "We begin our analysis by first looking to the normal, plain meaning of the language of the statute, reading the statute as a whole to ensure that 'no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory.'" *Id.* (citations omitted). "If the language of the statute is clear and unambiguous, we need not look beyond the statute's provisions and our analysis ends." *Barbre*, 402 Md. at 173. "If[,] however, the language is subject to more than one interpretation, it is ambiguous, and we resolve that ambiguity by looking to the statute's legislative history, case law, and statutory purpose." *Id.* Courts "may also analyze the statute's 'relationship to earlier and subsequent legislation, and other material that fairly bears on the fundamental issue of legislative purpose or goal, which becomes the context within which we read the particular language before us in a given case.'" *Blackstone v. Sharma*, 461 Md. 87, 114 (2018), *reconsideration denied* (Oct. 3, 2018) (quoting *Kaczorowski v. Mayor & City Council of Baltimore*, 309 Md. 505, 515 (1987)). We may also "consider the consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense." *Spangler v. McQuitty*, 449 Md. 33, 50 (2016) (citations omitted).

## DISCUSSION

Appellants argue that, under the Maryland Wage and Hour Law ("MWHL"), they are entitled to compensation for travel time between employer-designated worksites. They

4

assert that because Maryland has not explicitly adopted the Portal-to-Portal Act, the exclusions under that Act for time spent traveling between worksites cannot be used to limit their compensation. They contend that both the MWHL and the Maryland Wage Payment and Collection Law ("MWPCL") are "remedial statute[s] to be construed liberally in favor of the employee." *See Peters v. Early Healthcare Giver, Inc.*, 439 Md. 646, 661 (2014).

Appellants argue that the definition of "hours of work" found in COMAR § 09.12.41.10 and the definition of "employ" contained in Maryland Code, Labor and Employment § 3-101(c), when read together, require compensation for travel from one worksite to another. Appellants cite *Blackstone v. Sharma*, stating that, when unambiguous on their face, courts should follow the plain language of statutes and regulations. 461 Md. 87, 119 (2018), *reconsideration denied* (Oct. 3, 2018).

Conversely, appellees argue the MWHL is the "State parallel" to the FLSA, as amended by the Portal-to-Portal Act. They contend that the Portal-to-Portal Act has been in effect for 73 years, decades before Maryland adopted the MWHL and offers "interpretative guidance" for our analysis. Appellees cite to *Poe v. IESI MD Corp.*, where we explained that "because the Maryland statute is the counterpart to the Fair Labor Standards Act[,]" a federal regulation concerning the computation of overtime was "persuasive authority as to the correct interpretation of Maryland law." 243 Md. App. 243, 252 (2019) (citations omitted).

In 1938, Congress enacted the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. § 201 *et seq.*, upon finding "the existence, in industries engaged in commerce or in the

production of goods for commerce, of labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers . . . ." 29 U.S.C. § 202.[4]  As enacted, the FLSA established a minimum wage and mandated that employers engaged in the production of goods provide employees overtime compensation for each hour worked in excess of 40 hours during a workweek. §§ 6(a)(1), 7(a)(3), 52 Stat. 1062–1063.  Congress, in 1947, passed the Portal-to-Portal Act, 29 U.S.C. § 251 *et seq.*, amending certain provisions of the FLSA and absolving employers of liability under the FLSA for failure to pay minimum wages for certain delineated activities such as walking, riding or traveling to and from the actual workplace, and activities preliminary to or postliminary to principal work activities.

---

[4] 29 U.S.C. § 202. "Congressional finding and declaration of policy" states:

(a) The Congress finds that the existence, in industries engaged in commerce or in the production of goods for commerce, of labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers (1) causes commerce and the channels and instrumentalities of commerce to be used to spread and perpetuate such labor conditions among the workers of the several States; (2) burdens commerce and the free flow of goods in commerce; (3) constitutes an unfair method of competition in commerce; (4) leads to labor disputes burdening and obstructing commerce and the free flow of goods in commerce; and (5) interferes with the orderly and fair marketing of goods in commerce.  That Congress further finds that the employment of persons in domestic service in households affects commerce.

(b) It is declared to be the policy of this chapter, through the exercise by Congress of its power to regulate commerce among the several States and with foreign nations, to correct and as rapidly as practicable to eliminate the conditions above referred to in such industries without substantially curtailing employment or earning power.

6

The Portal-to-Portal Act was promulgated one year after the Supreme Court's decision in *Anderson v. Mt. Clemens Pottery Co.*, where the Court interpreted the FLSA to provide that employees are entitled to compensation for time spent walking from the time clock to their workstations. 328 U.S. 680, 691 (1946) (noting that "[s]ince the statutory workweek includes all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace, the time spent in these activities must be accorded appropriate compensation"). In its Portal-to-Portal Act declaration of policy, Congress stated that judicial interpretations of the FLSA disregarded "long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation, upon employers." 29 U.S.C. § 251. Congress further expressed that if the judiciary continued to interpret the FLSA as it had, it would result in "continuous uncertainty on the part of industry, both employer and employee." *Id.*

The Code of Federal Regulations ("CFR"), in its "General Statement as to the Effect of the Portal-to-Portal Act of 1947 on the Fair Labor Standards Act of 1938" provides:

> The effect on the Fair Labor Standards Act of the various provisions of the Portal Act must necessarily be determined by *viewing the two acts as interrelated parts of the entire statutory scheme for the establishment of basic fair labor standards*. The Portal Act contemplates that employers will be relieved, in certain circumstances, from liabilities or punishments to which they might otherwise be subject under the Fair Labor Standards Act.

29 C.F.R. § 790.2(a) (emphasis added).[5]

---

[5] The Code of Federal Regulations is the codification of regulations published in the Federal Register by the executive departments and agencies of the federal government.

7

The FLSA does not include in its language a definition of the term "work" but rather defines the term "employ." Its meaning has remained unchanged since its enactment in 1938 and states, "'[e]mploy' includes to suffer or permit to work." 29 U.S.C. § 203. The Portal-to-Portal Act, likewise, does not explicitly define the term "work." 29 U.S.C. § 262; 29 U.S.C. § 203. The Supreme Court, in *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, defined "work" "as meaning physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." 321 U.S. 590, 598 (1944). In *Anderson v. Mt. Clemens Pottery Co.*, the Supreme Court defined "the statutory workweek" to include "all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace." 328 U.S. 680, 690–91 (1946); *See Jewell Ridge Coal Corp. v. Local No. 6167, United Mine Workers of Am.*, 325 U.S. 161, 167 (1945) ("workweek [is] computed on the basis of the hours spent in actual work"). In *IBP, Inc. v. Alvarez*, the Supreme Court further held that "[o]ther than its express exceptions for travel to and from the location of the employee's 'principal activity,' and for activities that are preliminary or postliminary to that principal activity, the Portal-to-Portal Act does not purport to change this Court's earlier descriptions of the terms 'work' and 'workweek,' or to define the term 'workday.'" 546 U.S. 21, 28 (2005). Consistent with the Supreme Court's "prior decisions interpreting the FLSA, the Department of Labor [, in 29 CFR § 790.6(b),] adopted the continuous workday rule, which means that 'workday' is generally

The CFR is comprised of 50 titles that represent areas subject to federal regulation. Title 29 contains federal regulations relating to labor.

8

defined as 'the period between the commencement and completion on the same workday of an employee's principal activity or activities.'" *IBP*, 546 at 28 (alterations not in original).

In *Steiner v. Mitchell*, the Supreme Court held that "activities performed either before or after the regular work shift are compensable under the [P]ortal-to-[P]ortal provisions of the Fair Labor Standards Act if those activities are an integral and indispensable part of the principal activities for which [employees] are employed." 350 U.S. 247, 256 (1956) (alterations not in original). "[A]n activity is not integral and indispensable to an employee's principal activities unless it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform those activities." *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 35 (2014). "The integral and indispensable test is tied to the productive work that the employee is *employed to perform*." *Id.* at 36 (emphasis in original) (citations omitted).

In 1965, the MWHL was enacted by the General Assembly and is codified in the Labor and Employment Article of the Maryland Code, § 3-401, *et seq.* In its legislative findings and purpose, the General Assembly declared that the MWHL's enactment would "increase stability of the industry." *Id.* at § 3-402(b)(3).[6] We observe that the General

---

[6] Maryland Code, Labor and Employment Section 3-402, "Legislative findings and purpose" states, in its entirety:

Legislative findings

(a) The General Assembly finds that wages in some occupations in the State have been insufficient to provide adequate maintenance and to protect health.

9

Assembly's findings are reflective of Congress' policy findings and legislative actions that continuous judicial interpretations of the FLSA prior to enactment of the Portal-to-Portal Act would result in "uncertainty on the part of industry." 29 U.S.C. § 251. As previously stated, federal regulations require that the FLSA and the Portal-to-Portal Act be read as "interrelated parts of the entire statutory scheme for the establishment of basic fair labor standards." 29 C.F.R. § 790.2(a). This was the context in which the General Assembly enacted the MWHL.

The General Assembly, in Section 3-410 of the Maryland Labor and Employment Article, authorized the Commissioner of Labor and Industry (Commissioner) to enact regulations to enforce the MWHL, which are compiled in the Code of Maryland Regulations ("COMAR"). COMAR 09.12.41.10. defines "hours of work" as "the time during a workweek that an individual employed by an employer is required by the employer to be on the employer's premises, on duty, or at a prescribed workplace." COMAR 09.12.41.10 mirrors 29 C.F.R. § 778.223, which provides that, under the FLSA,

---

Statement of purpose

(b) The purpose of this subtitle is to set minimum wage standards in the State to:
  (1) provide a maintenance level that is consistent with the needs of the population for their efficiency, general well-being, and health;
  (2) safeguard employers and employees against unfair competition;
  (3) increase the stability of industry;
  (4) increase the buying power of employees; and
  (5) decrease the need to spend public money for the relief of employees.

10

"hours worked" includes "[a]ll time during which an employee is required to be on duty or to be on the employer's premises or at a prescribed workplace."

When enacted, the MWHL's definition of employ was almost identical to the FLSA's, which states, "'[e]mploy' includes to suffer or permit to work." 29 U.S.C. § 203. Md. Code, art 100, § 82(c). The Maryland Code currently states:

(1) "Employ" means to engage an individual to work.
(2) "Employ" includes:
    (i) allowing an individual to work; and
    (ii) instructing an individual to be present at a work site.

Md. Code, Lab. & Empl. § 3-101(c)(1). Under the MWHL, an employee may be compensated, as part of their work hours, for travel time if the individual: "(1) Travels during regular work hours; (2) Travels from one worksite to another; or (3) Is called out after work hours in emergency situations." COMAR 09.12.41.10. Title 29 C.F.R. Section 785.38, "[t]ravel that is all in a day's work[,]" states:

> Time spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked. Where an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice.

The Portal-to-Portal Act amendment, however, specifies that an employer is not required to pay an employee's wages for:

> (1) walking, riding or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

> (2) activities which are preliminary to or postliminary to said principal activity or activities,

11

which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities. For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

29 U.S.C. § 254(a). The Portal-to-Portal Act does not, however, relieve employers from liability if an activity is compensable by either:

(1) an express provision of a written or nonwritten contract in effect, at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer; or

(2) a custom or practice in effect, at the time of such activity, at the establishment or other place where such employee is employed, covering such activity, not inconsistent with a written or nonwritten contract, in effect at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer.

29 U.S.C. § 254(b).[7]

---

[7] The Portal-to-Portal Act further states:

(c) Restriction on activities compensable under contract or custom

For the purposes of subsection (b), an activity shall be considered as compensable under such contract provision or such custom or practice only when it is engaged in during the portion of the day with respect to which it is so made compensable.

(d) Determination of time employed with respect to activities

In the application of the minimum wage and overtime compensation provisions of the Fair Labor Standards Act of 1938, as amended, of the Walsh-Healey Act, or of the Bacon-Davis Act, in determining the time for

In *Poe*, we expressed that the MWHL is the "state's equivalent" of the federal statute and Maryland appellate courts have said that the MWHL is the "State parallel" to the FLSA. *Poe v. IESI MD Corp.*, 243 Md. App. 243, 250 (2019). There we held that a federal regulation for overtime calculation could be used to interpret the MWHL even though Maryland had not expressly adopted the federal regulation at issue. *Id.* at 250, 253–57. We stated:

> It is . . . unnecessary for Maryland to adopt a regulation that duplicates the federal regulation for the federal regulation to assist in the interpretation of what Maryland law requires. Once again, the federal regulation is a permissible interpretation of the Fair Labor Standards Act and, as such, is entitled to judicial deference as to the meaning of that Act. In this case, the relevant provisions of the Fair Labor Standards Act mirror those of the Maryland Wage and Hour Law. Therefore, the federal regulation interpreting the federal statute, even if not controlling, deserves consideration when a court interprets the Maryland statute. The federal regulation can shed light on the meaning of the Maryland statute even if Maryland has adopted no comparable regulation.

*Id.* at. 254. *Newell v. Runnels*, 407 Md. 578, 649 (2009); *Friolo v. Frankel*, 373 Md. 501, 513 (2003), *Campusano v. Lusitano Constr. LLC*, 208 Md. App. 29, 37 (2012).

In the case at bar, the circuit court concluded that "[b]ecause the General Assembly chose to graft the definition of employ directly from the FLSA into the MWHL . . . the interpretative guidance and statutory limitations imposed by the existing Portal-to-Portal

---

which an employer employs an employee with respect to walking, riding, traveling, or other preliminary or postliminary activities described in subsection (a) of this section, there shall be counted all that time, but only that time, during which the employee engages in any such activity which is compensable within the meaning of subsections (b) and (c) of this section.

29 U.S.C. § 254.

Act was also grafted into the MWHL." The circuit court stated further: "[s]ince 1947, it has been impossible to construe the FLSA without considering the amendments imposed by the Portal-to-Portal Act, such as . . . the lack of future employer wage liability for the activities specified in the Act." We agree with the court's conclusion, as to the effect of the General Assembly's decision to adopt the FLSA's definition of employ into the MWHL.

In this instance, the MWHL and COMAR regulations incorporate the FLSA, Portal-to-Portal Act amendments thereto, and the Code of Federal Regulations. Akin to our analysis in *Poe*, it is unnecessary for Maryland to specifically express that we have adopted an amendment to a federal statute where the Legislature has enacted a state's equivalent of the federal statute. As we explained in *Hanrahan v. Alterman*, 41 Md. App. 71, 81 (1979),

> [t]he law recognizes "a special class of related statutes, . . . the relationship (between which) results from the fact that one statute adopts the terms of the other without restating them. Incorporating statutory provisions by reference, *partially or entirely*, into legislation has been long recognized as an acceptable practice on both the state and federal levels unless prohibited by constitutional provisions." The purpose of incorporating, (adopting,) or referring to prior statutes is to avoid encumbering the statute books with useless repetition and unnecessary verbiage. []When passed, the incorporated act becomes a part of the incorporating legislation; it is as if the incorporated act was specifically written into the law.

(emphasis added) (footnotes omitted). When the MWHL was enacted, the Portal-to-Portal Act amendments to the FLSA had been in existence for decades and the Legislature was aware of this. Since its enactment, the Legislature has passed several amendments but has left "work" undefined as it is in the FLSA. Both statutes and regulations read and define compensable hours of work similarly. COMAR 09.12.41.10. defines "hours of work" as

14

"the time during a workweek that an individual employed by an employer is required by the employer to be on the employer's premises, on duty, or at a prescribed workplace" and provides that travel time is compensable when an employee "travels from one worksite to another." COMAR 09.12.41.10 mirrors 29 C.F.R. § 778.223, enacted in 1981, which provides, in relevant part:

> (a) . . . an employee must be compensated for all hours worked. As a general rule the term "hours worked" will include:
> > (1) All time during which an employee is required to be on duty or to be on the employer's premises or at a prescribed workplace; and . . .

As previously stated, Portal-to-Portal Act regulations provide that travel time is compensable in certain circumstances, including when an employee "travel[s] as part of his principal activity, such as travel from job site to job site during the workday . . . ." 29 C.F.R. § 785.38. Thus, in our view, Maryland law comports with the FLSA. *See.* COMAR 09.12.41.10. As a result, the MWHL and its regulations must be read as interrelated parts of the statutory scheme that includes the FLSA, the Portal-to-Portal Act and accompanying regulations. Amendments to COMAR that directly incorporated certain FLSA regulations, but did not expressly adopt Portal-to-Portal Act language, do not preclude the conclusion that the Legislature intended to partially incorporate the Portal-to-Portal Act into the MWHL when enacting the statute. While we agree with the circuit court that "the interpretative guidance and statutory limitations imposed by the existing Portal-to-Portal Act was also grafted into the MWHL," we do not interpret the MWHL so broadly as to graft the entire Portal-to-Portal Act into the MWHL. Our discussion is limited to only

15

those provisions of the Portal-to-Portal Act that relate to the issue in the present case, an employee's principal activity.

Appellants argue, alternatively, that the scope of compensable work has been expanded in Maryland beyond the FLSA. While we agree, we note that expansion has been limited to state employees. In *Dep't of Pub. Safety & Corr. Services v. Palmer*, the Court of Appeals found "no legislative intent to limit [activities that constitute work time for state employees, prescribed in COMAR 17.04.11.02B] to the scope of federal law." 389 Md. 443, 455 (2005) (alterations not in original). The Court concluded that time spent by state employees clearing security screening before and after their shift is compensable, finding that such activities, when occurring "immediately before the beginning or immediately after the end of an assigned shift" are *job-related. Id.* at 454; *see* COMAR 17.04.11.02B(1)(g). The Court's interpretation of the term "job-related" was clearly more expansive than the FLSA and the amendments of the Portal-to-Portal Act, but applied only to state employees.

This Court, likewise, has articulated in a case relating to state employees "there are circumstances in which state law goes beyond the FLSA" and that "[t]he FLSA is a floor, not a ceiling." *Comptroller of Maryland v. Miller*, 169 Md. App. 321, 351 (2006), *aff'd*, 398 Md. 272 (2007). In *Comptroller of Maryland v. Miller*, we interpreted COMAR 17.04.11.02B(j) in light of the Portal-to-Portal Act and held that commuting is "preliminary to or postliminary to" an employee's principal activity and not compensable. 169 Md. App. at 351. We acknowledged that "there are circumstances in which state law goes beyond the FLSA, as recognized by the General Assembly when it explicitly stated that state

16

employees are entitled to the greater of that which they are afforded by state or federal law." *Id.* at 351. Here, appellants are private sector employees and no expansions have been recognized for this classification of employees.

Appellants also argue that the General Assembly has defined "employer" as someone who exercises control over an employee, thus, the idea of "work" hinges on employer control, rather than the activity the employee is to perform. They contend that an employer exercises control over an employee when it requires said employee to report to a certain location. They urge us to adopt a control test to define "work" in Maryland. Appellants look to the California Supreme Court's rejection of the Portal-to-Portal Act in *Frlekin v. Apple Inc.* for support. 457 P.3d 526, 532 (Cal. 2020), *reh'g denied* (May 13, 2020). However, California has a distinct statutory and regulatory framework which, unlike Maryland's, expressly provides that employees are entitled to pay for time during which employees are subject to their *employer's control*. *See id.* at 532–33. California's rejection of the Portal-to-Portal Act is based on unambiguous state legislation.

Appellants also point to *The Maryland Guide to Wage Payment and Employment Standard* (*Maryland Guide*), issued by the DLLR, which states that "[w]ork is service performed by an employee at the request and under the control of an employer and, therefore, on the employer's time" and to the Court of Appeals' statement that "an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts." *Maryland Div. of Labor & Indus. v. Triangle Gen. Contractors, Inc.*, 366 Md. 407, 416 (2001). However, in *Himes Associates, Ltd. v. Anderson,* we clarified that "the *Maryland*

17

*Guide* specifies that 'it should not be cited as legal authority,' thus furthering [sic] limiting its value as an aid in statutory construction." 178 Md. App. 504, 536 n.6 (2008).

Appellants also argue, that in Maryland, "worksite" is defined expansively and is not limited to the employer's premises, thus, Rosecroft was an actual worksite. They point to a definition contained in the general contractor's project manual, which states that a worksite includes "any and all material staging, lay down, storage, office, and parking areas located within a twenty-five (25) mile radius of the beltway parcel and which are under the control of Prime General Contractor and whose use is related to work performed at the Project." Appellants point to this Court's decision in *Himes*, where we concluded that a client's office was a worksite because the employee "attended meetings twice a month" at the office. 178 Md. App. 504, 515 (2008). The "evidence showed that, as part of [the employee's] function as a project manager for [the employer, the employee] had to attend meetings twice a month at employer's office." *Id.* at 535. We did not find that the employer's office was a worksite because the employer required the employee to report to that site. Rather, we held that because attending meetings at the employer's office was part of the employee's job *function,* it was compensable. Appellants further cite to *Hausfeld v. Love Funding Corp.* where the U.S. District Court of Maryland found that a company was an employer under the MWPCL because the employee went to multiple locations in Maryland:

> To identify potential business and generate revenue for the [employer, the employee] . . . engaged in a marketing campaign that generated prospective Maryland borrowers whose premises the [employee] visited, conducted various site visits to properties . . . attended meetings . . . and attended various conferences and events in Maryland to generate business.

18

131 F. Supp. 3d 443, 455 (D. Md. 2015). As in *Himes*, the District Court found that the locations were worksites not because the employer required the employee to go to the site, but because the employee performed work at the sites. *See id.*, at 456 (stating that to be defined as an employer under the MWPCL, "all that is required is that the individual work to some extent in Maryland").

Here, the circuit court found that appellants were:

(1) ordered to park and assemble at Rosecroft;
(2) received no assignments, directives, or other orders regarding the day's work;
(3) donned/doffed no protective equipment;
(4) loaded no tools for transit beyond their first and last day at the MGM worksite; and
(5) were shuttled to the MGM site where [appellants] actually performed construction work on behalf of [appellees].

The circuit court concluded that carpentry at the MGM site was appellants' principal activity and, while at Rosecroft, appellants were not engaged in activities that were "integral and indispensable" to their role as carpenters. The court found "no basis to impute the General Contractor's definition of worksite into the employer/employee relationship between [appellants and appellees]." The court concluded that Rosecroft was not a worksite.

In its analysis, the circuit court looked to the Eleventh Circuit's holding in *Bonilla v. Baker Concrete Const. Inc.*, and, while not binding, we find that case instructive. 487 F.3d 1340 (11th Cir. 2007). In *Bonilla*, the Court held that "time . . . spent traveling on [employer] vehicles both before and after the security check point is exempt from

19

compensation under the FLSA[,]" relying on guidance provided in the Code of Federal Regulations Section 790.7(f), which states:

> Examples of walking, riding, or traveling which may be performed outside the workday and would normally be considered "preliminary" or "postliminary" activities are (1) walking or riding by an employee between the plant gate and the employee's lathe, workbench or other actual place of performance of his principal activity or activities; (2) riding on buses between a town and an outlying mine or factory where the employee is employed; and (3) riding on buses or trains from a logging camp to a particular site at which the logging operations are actually being conducted.

*Id.* at 1343. The Court stated:

> The employees did not perform any labor while waiting for or riding the vehicles, either at the beginning or end of each work day. No instructions were given by the supervisors nor were any tools carried on the buses because the tools were kept at the work sites. Appellants signed in at the work site and then received their instructions for the day. At the end of the day, appellants would sign out before boarding the bus to leave the airport through the security gate.

*Id.* at 1341. As the Eleventh Circuit noted, other circuits that have addressed the question concur. *Id.* at fn. 3. *See Ralph v. Tidewater Const. Corp.*, 361 F.2d 806, 808–09 (4th Cir. 1966) (finding that travel time to and from work on an employer-provided boat, to an off-shore construction site, is not compensable under the FLSA); and *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1288 (10th Cir. 2006) (holding that "[p]ursuant to the Portal-to-Portal Act, employers are not required to compensate their employees for time spent 'traveling to and from' the place of their principal activities").

We hold that the circuit court did not err in granting summary judgment. The MWHL and its regulations are interrelated parts of a statutory scheme that includes the FLSA, Portal-to-Portal Act amendments and accompanying regulations as they relate to an

employee's principal activity. Thus, appellants were not entitled to travel time from the Rosecroft parking lot to the MGM worksite. Further, to determine what constitutes a worksite, we examine not whether the employee was required to report to a location, but instead whether the employee performed part of their job function at the location. In the case at bar, no such functions were performed at Rosecroft. We hold further that the control test has no application in determining what constitutes a worksite.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

21